FILED
2026 Sep-14 PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**WINIFRED MARIE DAVIS,**

**Plaintiff**,

**v.**

**DR. DANIEL K. WIMS,**

**Defendant**.

**Case No. 5:25-cv-1331-HDM**

# MEMORANDUM OPINION AND ORDER

Before the court is Defendant Dr. Daniel K. Wims's renewed motion to dismiss Plaintiff Winifred Marie Davis's amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15). Davis, who now proceeds *pro se*, filed a response, and Wims filed a reply. (Docs. 17; 18). For the reasons below, the motion is due to be **GRANTED**.

## I. BACKGROUND

At this stage, the court accepts the amended complaint's well-pleaded factual allegations as true and draws reasonable inferences in Davis's favor. In the winter of 2022, Davis attended a graduation ceremony at Alabama Agricultural and Mechanical University. As she left the venue, her shoe caught in a cable protector, causing her to fall and allegedly injure her leg, hip, shoulder, and back.

Davis alleges that university employees and security personnel who witnessed or responded to the incident did not prepare a report. After corresponding with Wims's office, she learned that her claim had been denied and that she needed to submit it to the Alabama State Board of Adjustment ("the Board"). (Doc. 14 at 1).

The Board conducted a hearing on July 16, 2024. Davis alleges that, after the hearing, she learned that Wims, "perhaps through one of his lawyers," had told the Board "to ignore and disregard all of the witnesses' testimony" she presented. *Id*. at 1–2. She contends that Wims thereby interfered with her ability to pursue the claim and denied her due process because the claim was not "properly heard." *Id*. at 2. She alleges that Wims acted willfully, intentionally, and maliciously, and she expressly sues him in his individual—not official—capacity. *Id*.

The Board entered a written order on September 4, 2024. (Doc. 15-1). The order states that the Board received the evidence presented at the hearing but concluded that Davis had failed to establish a legal or moral obligation requiring the State to pay her claim. *Id.* at 2. The court may consider that order without converting the motion into one for summary judgment because the Board proceeding is central to the amended complaint and Davis does not dispute the order's authenticity. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The court does not, however, treat the order's statement that evidence was "received" as resolving Davis's allegation that the Board was told to disregard her witnesses.

Davis first filed this federal action on August 15, 2025. Her original complaint alleged that Wims violated her right to due process by moving to dismiss a related action she had filed in the Circuit Court of Madison County. (Doc. 1). On March 4, 2026, this court granted Wims's first motion to dismiss but allowed Davis until April 3, 2026, to file an amended complaint complying with Rules 8 and 10. (Doc. 13). Davis timely filed the operative amended complaint on March 30, 2026. (Doc. 14).

The amended complaint does not cite 42 U.S.C. § 1983, contain separately numbered counts, identify a jurisdictional statute, or include a demand for relief. But a plaintiff need not cite section 1983 by name when the facts otherwise state a constitutional claim against a person acting under color of state law. *See Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014). Construed liberally, the amended complaint asserts one claim: that Wims, acting under color of state law but sued in his individual capacity, deprived Davis of procedural due process under the Fourteenth Amendment by corrupting the Board's consideration of her personal-injury claim.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, the complaint must allege enough facts, accepted as true, to state

a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts permit a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. The court accepts factual allegations as true but need not accept legal conclusions or "[t]hreadbare recitals" of a claim's elements. *Id*.

Because Davis proceeds without counsel, the court construes her filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction does not allow the court to rewrite a deficient pleading, supply facts that have not been alleged, or disregard the minimum requirements of the Federal Rules. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). And a response brief ordinarily cannot amend the complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Even so, the court has considered Davis's explanation in her response that she means to allege interference after the hearing; that clarification does not affect the legal disposition.

## III. DISCUSSION

The Fourteenth Amendment prohibits a State from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. A traditional procedural-due-process claim requires "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3)

constitutionally inadequate process." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1223 (11th Cir. 2019) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)) (internal quotation marks omitted). Davis's claim fails at the first element because Alabama law does not give her a constitutionally protected entitlement either to payment of her claim or to the Board's procedures as an independent benefit. Alternatively, Wims is entitled to qualified immunity from damages because the right Davis asserts was not clearly established when the alleged conduct occurred.

**A. Davis has not alleged deprivation of a protected property interest.**

Property interests do not arise from the Constitution itself. They are created and defined by "existing rules or understandings" from an independent source, usually state law, that secure a benefit and support a legitimate claim of entitlement to it. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). A person must have more than an abstract need, desire, or unilateral expectation. *Id*. And "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Two related but distinct interests might be inferred from Davis's filings: an interest in receiving compensation for her injuries, and an interest in having the Board consider her claim through an uncorrupted process. Neither is protected property on the allegations here.

*1. No entitlement to compensation*

Alabama's sovereign-immunity provision generally prevents the State and its institutions from being made defendants in court. Ala. Const. art. I, § 14. The Legislature created the Board of Adjustment to consider specified claims that cannot be adjudicated in court because of that immunity. *Ex parte Houston Cnty. Bd. of Educ.*, 562 So. 2d 513, 514 (Ala. 1990). The Board has a statutory duty to "hear and consider" claims for personal injury caused by the State or one of its institutions. Ala. Code § 41-9-62(a)(1) (1975). A claimant may file and prosecute a claim personally or through a representative. *Id*. § 41-9-63.

For a properly presented personal-injury claim, the Board determines the facts, uses ordinary negligence rules "as its guide," considers the State's moral obligation, and determines "the amount, *if any*, which should be paid." *Id*. § 41-9-68(a) (emphasis added). The statute also states that ordinary negligence rules "are to be followed" for claims by persons who are not state employees. *Id*. Even so, the scheme does not direct an award to every person permitted to file a claim; the Board must determine whether the claimant proved a legal or moral obligation and what amount, "if any," should be paid. *Id.* Alabama's appellate courts accordingly describe the Board mechanism as a legislative privilege rather than a new right of action against the State. *See Ex parte Houston Cnty. Bd. of Educ.*, 562 So. 2d at 514. More specifically, *Jackson v. Alabama Board of Adjustment* held that the statutory scheme does not create a claim of entitlement to reimbursement; it creates

only the ability to present a claim before the Board without the State invoking sovereign immunity. 160 So. 3d 821, 826 (Ala. Civ. App. 2014).

The Eleventh Circuit's recent published decision in *African People's Education and Defense Fund, Inc. v. Pinellas County*, 184 F.4th 1194 (11th Cir. 2026), reinforces that conclusion. There, a nonprofit alleged that a county revoked one grant and denied another without adequate process. *Id.* at 1209. The court affirmed dismissal of the plaintiff's procedural-due-process claim under Rule 12(b)(6) because no law required the county to award grants to particular applicants under defined criteria; officials retained discretion after an applicant met baseline eligibility requirements. *Id*. at 1214–15. Under *Castle Rock*, that discretion defeated any property entitlement. *Id*. at 1215. The same principle applies here. Sections 41-9-62 and 41-9-68 open the Board process to specified claims and supply considerations for the Board's decision, but they do not secure payment to Davis or eliminate the Board's judgment over whether the State bears a legal or moral obligation and what amount, "if any," should be paid.

*African People's Education* was decided after the parties completed briefing. The court nevertheless must apply controlling law in effect when it decides the case. *See Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993). In any event, *African People's Education* applied the settled *Roth* and *Castle Rock* framework; it did not announce a new pleading rule.

*2. No freestanding property interest in the Board's procedure*

Davis emphasizes that she is not claiming a property interest "in [the] process" itself. (Doc. 17 at 3). Rather, she says that Wims altered or corrupted the process established by the Legislature. This distinction does not cure the claim. Procedural rules ordinarily do not create the substantive property interest that triggers constitutional protection. *See Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983). A court first identifies an independent liberty or property interest; only then does it ask what process is constitutionally due before that interest may be taken.

The court has considered *Logan v. Zimmerman Brush Co.*, in which the Supreme Court recognized that a state-law cause of action could be property when state procedure finally destroyed the claimant's ability to obtain an adjudication. 455 U.S. 422, 428–33 (1982). *Logan* does not control this case. Davis did not possess an otherwise enforceable tort cause of action against Alabama A&M that the Board's procedure extinguished. Alabama's sovereign immunity prevented such an action against the State institution, and the Board statutes did not create a new judicial cause of action. *See Ex parte Houston Cnty. Bd. of Educ.*, 562 So. 2d at 514. The Board instead provided the only legislative mechanism for requesting payment from the State on a claim that could not be litigated against it in court.

The court has also considered the Eleventh Circuit's *Medical Laundry* decisions. In the first appeal, the court held that sovereign immunity did not, by itself, eliminate a contractor's property interest in an existing state contract because

Alabama had provided the Board process to adjust the contract claim. *Med. Laundry Serv. v. Bd. of Trs. of Univ. of Alabama*, 840 F.2d 840, 841–42 (11th Cir. 1988), amended by 856 F.2d 128 (11th Cir. 1988). After remand, however, the court affirmed summary judgment because a simple breach of a state contract did not amount to a constitutional deprivation. *Med. Laundry Servs. v. Bd. of Trs. of Univ. of Alabama*, 906 F.2d 571, 572–73 (11th Cir. 1990). Most recently, *African People's Education* described *Medical Laundry* as holding that even an enforceable public contract did not create the asserted constitutional property interest. 184 F.4th at 1215.

Those decisions do not establish a property interest for Davis. *Medical Laundry* began with a preexisting contract—a traditional source of substantive rights independent of the Board's procedures. Davis alleges only an unliquidated tort claim against a state institution. Under Alabama law, that claim is not an enforceable cause of action against the institution, and *Jackson* holds that the Board statutes do not themselves create an entitlement to reimbursement. 160 So. 3d at 824. A statutory opportunity to request a discretionary award is not protected property merely because the State prescribes procedures for considering the request.

3. *The alleged interference does not supply the missing property interest*

The court accepts for present purposes Davis's allegation that Wims, personally or through counsel, told the Board to disregard her witnesses. If true,

that conduct would raise a serious question about compliance with the Board's own procedures and the fairness of its decisionmaking. But section 1983 does not convert every violation of state procedure, every irregular administrative decision, or every unfair act by a state official into a federal due-process claim. *See McKinney v. Pate*, 20 F.3d 1550, 1556–57 (11th Cir. 1994) (en banc), abrogated on other grounds by *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). The Due Process Clause protects against deprivation of life, liberty, or property without adequate process; it does not create an abstract federal right to correct administration of every state program.

Because Davis has not alleged a constitutionally protected property interest, she cannot state a procedural-due-process claim even if the Board process was affected in the manner she describes. *African People's Education* followed the same course: after finding no protected property interest, the Eleventh Circuit did not decide whether the plaintiff had received adequate process or whether state remedies were adequate. 184 F.4th at 1215, 1215 n.5. This court likewise does not rest dismissal on the mere fact that a hearing occurred, on the Board order's recital that evidence was received, on any purported appeal of the Board's decision, or on the existence of an unidentified state-law remedy. The absence of a protected interest is sufficient.

**B. Qualified immunity provides an alternative basis for dismissal of any claim for damages.**

Even if Davis had plausibly alleged a protected property interest and constitutionally deficient process, her individual-capacity damages claim would be barred by qualified immunity. Qualified immunity shields a government official performing a discretionary function unless the official violates a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The defendant first must show that the challenged conduct occurred within his discretionary authority. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004). The court asks whether the official was performing a job-related function through means within his power, defining the function at an appropriate level of generality and temporarily disregarding the alleged illegality. *Id*. at 1265–66.

The general function alleged here was responding—directly or through university counsel—to an administrative claim asserted against Alabama A&M and communicating the University's position to the body considering that claim. Davis herself alleges that Wims undertook the challenged conduct "acting as the President of the University" and that his actions were state action for that reason. (Doc. 14 at 2). Responding on the University's behalf to a claim directed at the University is job-related, and communicating through counsel is a means ordinarily within a university president's authority. The court does not define the function as "corrupting" the Board or "ordering" it to violate the law, because doing so would

collapse the discretionary-authority inquiry into the merits. *See Holloman*, 370 F.3d at 1266. Wims has therefore satisfied the threshold requirement.

The burden then shifts to Davis to show both a constitutional violation and that the right was clearly established. *Id*. at 1264. A right is clearly established only if every reasonable official would understand that the particular conduct was unlawful. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Ordinarily, the plaintiff must identify materially similar precedent from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court, or show that the conduct so obviously violated the Constitution that no case was needed. *See Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). The inquiry is measured at the time of the alleged conduct—here, no later than 2024.

No controlling decision existing in 2024 clearly established that a claimant possessed a federal property right in the adjudication of a discretionary personal-injury claim before the Alabama Board of Adjustment, much less that a university president's alleged communication to the Board violated such a right. Alabama authority instead described the Board remedy as a privilege and rejected an entitlement to reimbursement or an unconditional evidentiary hearing. *Ex parte Houston Cnty. Bd. of Educ.*, 562 So. 2d at 514; *Jackson*, 160 So. 3d at 826. *Medical Laundry* itself noted alleged *ex parte* contacts between a university president and Board members but expressly left the issue unresolved. 906 F.2d at 573 n.1. A decision that identifies but does not decide the closely analogous

constitutional question does not give every reasonable official fair warning of the answer.

*African People's Education*, which postdates the alleged conduct by nearly two years, cannot retroactively supply clearly established law. Its holding that a discretionary benefit is not protected property instead confirms that the asserted right was, at minimum, not beyond debate in 2024. Nor is this one of the rare obvious-clarity cases. The alleged instruction to disregard evidence, if true, is troubling; but given the unsettled threshold question of whether Davis had constitutional property at stake, existing law did not make the asserted Fourteenth Amendment violation apparent to every reasonable official. Wims is therefore entitled to qualified immunity from any claim for damages.

**C. Further amendment would be futile.**

The amended complaint still does not fully comply with Rules 8 and 10: it lacks a jurisdictional statement and demand for relief, and its allegations are not set out in numbered paragraphs or separate counts. *See* Fed. R. Civ. P. 8(a)(1), (3), 10(b). Those defects are curable, and the court has not dismissed the action merely because Davis failed to use technical pleading conventions. The court can discern the constitutional theory she intends to assert.

But the substantive defects are not curable by a more carefully formatted complaint. The court identified the original complaint's deficiencies, afforded Davis a deadline to amend, and instructed her to comply with Rules 8 and 10.

(Doc. 13). The operative pleading presents a different factual theory but still fails as a matter of law: the Board scheme did not give Davis the property entitlement her due-process claim requires, and any individual-capacity damages claim is independently barred by qualified immunity. Additional factual detail about who communicated with the Board, when the communication occurred, or what words were used would not create a state-law entitlement or make the asserted right clearly established in 2024. Leave to amend may be denied when amendment would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Dismissal with prejudice is therefore appropriate.

This ruling addresses only the federal constitutional claim pleaded against Wims. It does not adjudicate whether Alabama A&M was negligent, whether Davis proved a legal or moral obligation before the Board, or the extent of her alleged injuries.

## IV. CONCLUSION

For these reasons, Defendant Dr. Daniel K. Wims's motion to dismiss the amended complaint, (doc. 15), is **GRANTED**. Plaintiff Winifred Marie Davis's claim is **DISMISSED WITH PREJUDICE**, and this action is **DISMISSED WITH PREJUDICE**. A separate final judgment will be entered.

The court **DIRECTS** the Clerk of Court to mail a copy of this Memorandum Opinion and Order to *pro se* Plaintiff Winifred Marie Davis at her address of record.

**DONE** and **ORDERED** on September 14, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE